Date Signed:
May 15, 2015



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>ALVIN K. WOODS,<br><br>Debtor. | Case No. 14-00039<br>Chapter 7 |
| VICTORIA SEBETICH,<br><br>Plaintiff,<br><br>v.<br><br>ALVIN K. WOODS,<br><br>Defendant. | Adv. No. 14-90019<br><br>Related Docket No. 1 |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial of this adversary proceeding was held on April 7 and 8, 2015. John R. Remis, Jr., and Robert D. Eheler, Jr., represented plaintiff Victoria Sebetich. Elizabeth A. Kane represented defendant Alvin K. Woods.

Based on the evidence, I make the following

# FINDINGS OF FACT

1. Plaintiff Victoria Sebetich is a sister of Clement K. Woods. Clement[1] is the father of Alvin K. Woods and Clifford Woods. Thus, Victoria is the aunt of Alvin and Clifford.

2. In the beginning of 2006, Alvin and Clifford orally agreed to buy Victoria's house in Mililani for $500,000. They did not agree on a date by which the purchase price would be paid. They all knew that Alvin and Clifford could only afford to pay $500,000 by borrowing.

3. When he made the oral agreement, Alvin intended to perform his obligations under it.

4. On May 16, 2006, Victoria executed and delivered a deed conveying the Mililani property to Alvin and Clifford.

5. On May 18, 2006, Victoria signed a letter, addressed "to whom it may concern," stating that she was gifting the property to Alvin and Clifford. Alvin and Clifford asked Victoria to sign it, and Victoria signed it, in order to induce a mortgage lender to make a loan to Alvin and Clifford secured by the Mililani property. Victoria, Alvin, and Clifford all knew that Alvin and Clifford had promised to pay $500,000 for the property and therefore that the letter was false.

---

[1] I will sometimes use the first names of the parties and witnesses. I do this solely for simplicity and without intending any disrespect.

2

6.      In July 2006, Alvin and Clifford borrowed $300,000 against the property. This was the largest loan for which they could qualify. The net loan proceeds were $262,657.28. Alvin and Clifford paid Victoria $150,000 and kept the rest to renovate the house.

7.      On September 20, 2006, Victoria, Alvin, and Clifford signed a document[2] which stated that Clifford and Alvin agreed to pay Victoria $350,000 for the Mililani property. ($350,000 is the original purchase price of $500,000 minus the $150,000 payment.) This is the first and only writing confirming the agreement. Alvin and Clifford further agreed that, "If we should die or are unable to pay the $350,000.00, we agree to give ownership of the Mililani property" to Victoria. The agreement did not state any other terms, such as a due date for payment of the $350,000.

8.      When Alvin signed this document, he intended to carry out his promises.

9.      Alvin and Clifford made no payments to Victoria other than the first $150,000 payment.

10.     In March 2007, Alvin and Clifford refinanced the Mililani property with a new loan in the original principal amount of $472,500. They used the proceeds to

---

[2] Exhibit "1."

3

pay off the prior mortgage on the property and to renovate the house. They did not remit any of the loan proceeds to Victoria.

11. In 2010, Victoria sued Alvin and Clifford. The complaint stated claims for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and fraud. Alvin and Clifford did not answer the complaint, and the court entered a default judgment against them for the unpaid purchase price plus attorneys' fees and costs. Victoria recorded her judgment which created a lien on the Mililani property.

12. On February 25, 2013, Clifford and Alvin quitclaimed a half interest in the Mililani property to their father and mother, Clement and Irmgard. On May 15, 2013, the four of them signed another quitclaim deed in favor of themselves, apparently to correct a technical error in the earlier deed. Clifford and Alvin made these transfers because Clement was supporting Alvin and paying the mortgage on the property. When Clement and Irmgard became part owners of the property, their were able to claim a tax deduction for the mortgage interest they were paying.

13. On December 17, 2013, Victoria filed suit in state court to foreclose her judgment lien on the Mililani property.

14. On January 14, 2014, Alvin filed a chapter 13 bankruptcy petition. He reported gross monthly income of $946 from Yamaguchi Business Services. At the time, he had just been hired (he disclosed that he had been employed for two weeks)

4

and had not yet begun to work. He believed that he would earn that amount. As it turned out, he worked for only a few days and earned very little. He also reported anticipated family support of $620 per month.

15. Alvin did not know that his statement about his anticipated future income was incorrect and did not intend to deceive anyone when he made that statement.

16. Alvin's statement about anticipated family support was substantially correct. His chapter 13 plan payments are apparently current. Because he is unemployed, he has no earned income to make his plan payments. Therefore, his family must be making the plan payments.

17. Alvin's bankruptcy schedules state that he owns a 50% interest in the Mililani house. This is not true; he owns a 25% interest.

18. Alvin did not knowingly misstate his ownership interest in the Mililani property. He honestly misunderstood the effect of the multiple deeds.

19. Alvin did not intend to deceive anyone in any manner in connection with his plan.

20. Alvin's proposed chapter 13 plan proposed payments of $900 per month for sixty months. Alvin also filed a motion to avoid Victoria's judgment lien. The plan was confirmed and the motion to avoid lien was granted. No timely appeal from the orders was taken.

5

Based on these findings of fact, I draw the following

## CONCLUSIONS OF LAW

### I. Jurisdiction and Venue

1. The court has personal jurisdiction over the defendants and jurisdiction of the subject matter. The bankruptcy court has statutory and constitutional power to enter a final judgment. Venue is proper in this district.

### II. Section 523(a)(2)

2. A chapter 13 discharge does not not discharge an individual from any debt for money to the extent that the debtor obtained it by "false pretenses, a false representation, or actual fraud . . . ."[3] The plaintiff must prove five elements:

   (i) Misrepresentation, fraudulent omission, or the debtor's deceptive conduct;

   (ii) Knowledge of the falsity or deceptiveness of his statement or conduct;

   (iii) An intent to deceive;

   (iv) Justifiable reliance by the creditor on the debtor's statement or conduct; and

   (v) Damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.[4]

---

[3] 11 U.S. C. §§ 523(a)(2)(A), 1328(a)(2).

[4] *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (B.A.P. 9th Cir. 2009).

6

3. The first prong of the five-part 523(a)(2)(A) test "'[must] encompass statements that falsely purport to depict *current or past facts*. [A debtor's] promise . . . related to [a] future action [which does] not purport to depict current or past fact . . . therefore cannot be defined as a *false representation or a false pretense.*' "[5] Simply failing to perform a promise does not make a debt nondischargeable under section 523(a)(2)(A).[6]

4. A misrepresentation about a debtor's intention to perform a promise may, however, be grounds for a nondischargeability claim.[7] Thus, the touchstone is whether the debtor intended to perform his promise when he made it.

5. I have found that, when Alvin and Clifford orally agreed to pay Victoria $500,000 for the property, and when they agreed in writing to pay her the balance of $350,000 for the property, Alvin intended to carry out that promise. Therefore, Victoria cannot prevail under section 523(a)(6).

### III. Issue Preclusion

6. Victoria argues that, under the rule of res judicata, the prepetition default judgment conclusively establishes that Alvin defrauded Victoria.

---

[5] *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991) (quoting *In re Roeder*, 61 B.R. 179, 181 (Bankr. W. D. Ky. 1986)) (emphasis in original).

[6] 4-523 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 523.08[d] (16th ed. 2015).

[7] *Id.*

7
U.S. Bankruptcy Court - Hawaii   #14-90019   Dkt # 80   Filed 05/15/15   Page 7 of 12

7. Alvin correctly points out that res judicata (now known as claim preclusion) does not apply in nondischargeability proceedings. But the usual rules of issue preclusion (formerly known as collateral estoppel) apply in such proceedings.[8]

8. Under the full faith and credit statute, federal courts must give state court judgments the same preclusive effect that a state court would.[9] To determine the preclusive effect of a state court judgment, federal courts apply the preclusion law of the state in which the judgment was entered.[10] Therefore, Hawaii law on issue preclusion applies.

9. In Hawaii, issue preclusion prevents parties from relitigating issues already decided in prior proceedings.[11] The party asserting issue preclusion must prove five elements. First, the issues to be precluded must be identical to the ones decided in the prior proceeding. Second, the issues must have been actually litigated in the prior proceeding. Third, the issues must have been necessarily decided. Fourth, the decision must have been final and on the merits. Finally, the party to be precluded

---

[8] *Grogan v. Garner*, 498 U.S. 279, 284-85 (1996).

[9] 28 U.S.C. § 1738; *Gayden v. Nourbaksh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995) (citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)).

[10] *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *DiRuzza v. County of Tehama*, 323 F.3d 1147, 1152 (9th Cir. 2003).

[11] *Roxas v. Marcos*, 969 P.2d 1209, 1237 (Haw. 1998).

U.S. Bankruptcy Court - Hawaii #14-90019 Dkt # 80 Filed 05/15/15 Page 8 of 12

must be identical to or in privity with a party to the prior proceeding.[12]

10. The state court did not "necessarily decide" the issue of fraud. In her complaint, Victoria stated claims for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and fraud. Any of those claims could have supported the judgment that the state court entered in favor of Victoria, and the state court did not specify which of the claims the court adopted. But only the fraud claim could have supported a nondischargeability determination in this court.

11. Because the state court's judgment could have been based solely on a breach of contract theory, the state court did not "necessarily decide" the issue of fraud. Therefore, the state court's judgment does not have issue preclusive effect here.

## IV. Section 1330(a)

12. The court may revoke an order confirming a chapter 13 plan upon a timely request "if such order was procured by fraud."[13] Fraud is the only basis for revocation of a confirmation order; equitable grounds will not suffice.[14]

---

[12] *Id.*

[13] 11 U.S.C. § 1330(a).

[14] 11 U.S.C. § 1330(a); *Branchburg Plaza Assoc. v. Fesq (In re Fesq)*, 153 F.3d 113 (3d Cir. 1998); 8-1330 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1330.01[2] (16th ed. 2015). *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440 (9th Cir. 1986), is not to the contrary. In that case, the bankruptcy court "partially confirmed" a chapter 13 plan subject to later determination of

9

13.     To prevail, the party seeking revocation must prove the elements of fraud.[15]

> [T]he creditor must prove: (1) that the debtor made a representation regarding his compliance with § 1330(a) which was materially false; (2) that the representation was either known by the debtor to be false, or was made without belief in its truth, or was made with reckless disregard for the truth; (3) that the representation was made to induce the court to rely upon it; (4) that the court did rely upon it; and (5) that as a consequence of such reliance, the court entered confirmation.[16]

14.     The alleged misrepresentations on which Victoria relies relate to (a) Alvin's employment status and income, (b) his family's contributions to his plan payments and his support, and (c) his percentage ownership interest in the Mililani property.

15.     I have found that Alvin did not knowingly misrepresent his employment status or income. He honestly expected to earn the amount reflected in his schedules. The expected income did not materialize, but that does not amount to fraud.

16.     Alvin's representations about his employment status and income were

---

one issue. The bankruptcy court later decided that, because the debtor had not filed the plan in good faith, the "partial confirmation" order should be revoked and the plan rejected. The Ninth Circuit affirmed "the bankruptcy court's power to revoke a plan which it had only partially confirmed or which it confirmed expressly 'pending later ruling.'" *Id.* at 1444. There was no "partial confirmation" in this case, so section 1330 furnishes the only ground to revoke the confirmation order.

[15] 8-1330 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 1330.01[2] (16th ed. 2015).

[16] *Nikoloutsos v. Nikoloutsos (In re Nikoloutsos)*, 199 F.3d 233, 238 (5th Cir. 2000); *compare Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (B.A.P. 9th Cir. 2009) (discussing the elements of fraud under § 523(a)(2)(A).

10

U.S. Bankruptcy Court - Hawaii   #14-90019   Dkt # 80   Filed 05/15/15   Page 10 of 12

not material, and the court did not rely on them to confirm his plan, because family contributions, not wage income, were the primary funding source.

17. Alvin's representations about family support were true when he made them and have proven true. As far as the record reveals, Alvin's plan payments are current. Because Alvin is not earning any income, his family must be making the plan payments. Therefore, his family is contributing at least as much as (and probably more than) Alvin represented.

18. Alvin's representation about his percentage ownership in the Mililani house were not material to plan confirmation. Alvin's true ownership is less than he represented. Because chapter 13 plan payments are based in part on the amount of equity in the debtor's assets,[17] an overstatement of the debtor's ownership interest in an asset can only result in a larger plan payment than the law requires. Therefore, Alvin's misstatement could not have disadvantaged creditors.

19. I have found that Alvin did not knowingly misstate his ownership interest in the Mililani property and that he did not intend to deceive the court, the trustee, or the creditors in any manner in connection with the confirmation of his plan.

20. Therefore, revocation of the confirmation order is not warranted.

---

[17] 11 U.S.C. § 1325(a)(4).

U.S. Bankruptcy Court - Hawaii   #14-90019   Dkt # 80   Filed 05/15/15   Page 11 of 12

## CONCLUSION

Alvin is entitled to judgment in his favor. Alvin's counsel is directed to submit a proposed form of judgment.

**END OF FINDINGS AND CONCLUSIONS**